UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATE OF AMERICA,<br>Plaintiff,<br>v.<br>ENRIQUE LOPEZ QUINTERO,<br>Defendant. | Case No. 5:11-cr-00711-EJD<br>Case No. 5: 11-cr-00550-EJD<br>**ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE**<br>Re: Dkt. Nos. 68, 72 |

Before the Court is Defendant Enrique Lopez Quintero's second motion for compassionate release. For the reasons stated below, the motion is denied.

I.   **BACKGROUND**

On July 9, 2012, Defendant pled guilty pursuant to a written plea agreement to four counts charged in two separate cases: two counts of conspiracy to possess with intent to distribute and distribute methamphetamine in violation of 21 U.S.C. § 846; and two counts of possession with intent to distribute and distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii).[1] Defendant participated in the sale of three ounces of methamphetamine to one undercover officer and a separate sale of one quarter ounce of methamphetamine to another undercover agent. According to the PSR, Defendant was a career offender based on the following convictions: (1) a 1989 misdemeanor conviction for grand theft; (2) a 1989 misdemeanor conviction for carrying a loaded firearm in a public place; (3) a 1990 misdemeanor conviction for exhibiting a loaded firearm; (4) a 1990 felony conviction for second degree burglary; (5) a 1991

---

[1] The other case number is 5:11-cr-00550-EJD.

ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE
1

1  felony conviction for second-degree burglary; (6) a 1997 felony conviction for possession for sale
2  of a controlled substance (cocaine); (7) a 1999 felony conviction for possession for sale of a
3  controlled substance; (8) a 1999 felony conviction for possession of a controlled substance and
4  misdemeanor conviction for reckless driving; (9) a 2003 felony conviction for possession for sale
5  of a controlled substance; and (10) a 2005 felony conviction for perjury.  The PSR also noted that
6  Defendant had been arrested several times.  Consistent with the plea agreement, Defendant was
7  sentenced to four concurrent custodial terms of 240 months.  Judgment was entered on October
8  17, 2012.  Defendant, now 53 years old, began serving his sentence on October 14, 2011, and is
9  scheduled to be released on October 28, 2028.  He has served more than 50% of his sentence.

In May of 2020, Defendant filed his first motion for compassionate release, asserting (1) that he had tested positive for COVID-19 and FCI Lompoc could not adequately care for him, and (2) that changes to federal sentencing laws, specifically 21 U.S.C. § 851, constituted a separate basis for release.  In 2018, the First Step Act was enacted and reduced sentences for drug-related crimes.  The Court denied the motion, reasoning that Defendant's medical conditions did not rise to the level of extraordinary and compelling reasons for compassionate release, and that it was speculative to assume Defendant would not have rejected the government's plea agreement if the First Step Act maximum sentences were in effect in 2012.  Order Deny'g Mot. for Compassionate Release, Dkt. No. 65.

Defendant's second motion for compassionate release is based upon "[a] sentencing disparity resulting from changes in federal sentencing law, extraordinary rehabilitation, the harsher conditions of confinement during the pandemic, and the ongoing danger of the pandemic."  Mot. at 1.  The government opposes the motion.  *See U.S. v.* Quintero, 11cr711, Dkt. No. 75.

**II.    STANDARDS**

Title 18 U.S.C. § 3582, as amended by the First Step Act (FSA), provides that a court may modify a defendant's sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf" or after "the lapse of 30 days from the receipt of such a request by the warden

ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE
2

of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Upon such a motion, a court may modify a defendant's sentence "after considering the factors set forth in § 3553(a) to the extent applicable" if it finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A)(i).

The United States Sentencing Guidelines ("U.S.S.G.") set forth a policy statement regarding "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)." U.S.S.G. § 1B1.13. The Ninth Circuit has recently held, consistent with every circuit to have considered the issue, that U.S.S.G. § 1B1.13 is not an "applicable policy statement" within the meaning of Section 3582(c)(1)(A) for motions filed by a defendant. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). Instead, the Sentencing Commission's statements in U.S.S.G. § 1B1.13 "maybe inform a district court's discretion for §3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id*. As a permissible source to "inform" the court's discretion, U.S.S.G. § 1B1.13 describes "extraordinary and compelling reasons" that warrant a sentence reduction to include: (1) medical conditions which diminish the ability of the defendant to provide self-care in prison, (2) age-related deterioration, (3) family circumstances, or (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories as determined by the BOP Director. U.S.S.G. § 1B1.13, cmt. n.1. Ultimately, when considering a section 3582(c)(1)(A) motion, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *Aruda,* 993 F.3d at 801.

### III. DISCUSSION

First, Defendant contends that compassionate release is warranted due to changes in federal sentencing laws. By Defendant's calculations, if he were sentenced today, his sentence would be governed solely by a ten-year mandatory minimum (which he has already served) and a career offender advisory guideline range of 188-235 months. The Court has already considered and rejected this argument in the context of Defendant's first motion for compassionate release

ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE
3

and will not reconsider it herein.

Second, Defendant relies on his rehabilitation as a basis for compassionate release. The Court has reviewed the 2020 Annual Orderly Appraisal. Defendant has also successfully completed numerous educational programs. It is evident that Defendant has worked to improve himself. The Court has also considered the letters written by his family and friend in support of his release. The Court has also considered Defendant's letter and memos from Lompoc employees who supervised Defendant. They are a testament to the significant and commendable progress Defendant is making. Nevertheless, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

Third, Defendant's general concerns about possible exposure to COVID-19 do not justify compassionate release. *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020). To the extent Defendant has specific concerns about the conditions at Federal Correctional Institute Lompoc ("Lompoc"), where he is housed, the Court notes that the conditions appear to be stable at this time.[2] As of October 12, 2021, zero inmates and zero staff members have tested positive; three inmates have died; zero staff members have died; and 556 inmates and 26 staff members have recovered from COVID-19. *See h*ttps://www.bop.gov/coronavirus/ ;jsessionid=20C84B827E33EDD60EA7D57F7DA9EBAC. Defendant is among those who recovered.

Defendant has recently been diagnosed with chronic kidney disease stage 2 (mild) and is overweight. According to the Centers for Disease Control and Prevention ("CDC"), adults with these conditions can be more likely to become severely ill from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The Court notes, however, that Defendant tested positive for COVID-19 on May 5, 2020, was asymptomatic, quarantined, and then released. Now, he is fully vaccinated. That

---

[2] BOP made extensive changes to its operations, based on a plan that was prepared over many years, and refined in early 2020 in consultation with the CDC and the World Health Organization. Those efforts continue. The BOP's "action plan" is described in detail at ww.bop.gov/coronavirus.

ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE
4

Defendant was vaccinated and recovered from COVID-19 provides a measure of protection. *See, e.g., United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.) ("absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A).").

Defendant cites to several cases in which an inmate was granted a compassionate release during the pandemic. *See* Mot. at 15-16. Each case, however, is distinguishable. For example, in one case, the court granted compassionate release to an inmate, age fifty-nine, who after being convicted at trial, served twenty-six years of a life sentence, and suffered from obesity and hypertension. *United States v. Pappa*, No. 95-00084-CR, 2021 WL 1439714, at *4 (S.D. Fla. Apr. 1, 2021). In contrast, Defendant is serving a sentence pursuant to a plea agreement; is younger; and has served far fewer years. In another case, the court granted compassionate release to an inmate, age seventy-three, with chronic kidney disease, who contracted COVID-19, was hospitalized after experiencing hypoxia and respiratory failure, and diagnosed with atrial fibrillation—a condition that can lead to blood clots, stroke, hearth failure, and other heart-related complications. *United States v. Sweet*, No. 2:07-cr-20369-VAR-VMM, 2021 WL 1430836, at *2 (E.D. Mich. Apr. 15, 2021). In contrast, Defendant is much younger and suffers from fewer, less severe, health conditions. In yet another case, the court granted compassionate release to an inmate, age fifty-four, who had served nine years because (1) if the inmate were charged and sentenced for his drug-related offense in 2021, he would face only a mandatory minimum of five years and because (2) the inmate had served four years more than the mandatory minimum, taken uncommon rehabilitative steps, had overcome his addiction to methamphetamines, and suffered from several health conditions, including a unspecified ailment related to prior intravenous drug use. *United States v. Avalos*, No. 12-CR-00246-DAK, 2021 WL 3617420, at *5 (D. Utah Aug. 16, 2021). Avalos' past convictions for small-scale distribution of drugs marked him as a career offender. The court sentenced Avalos to 168 months, even though the suggested sentencing range was 262 to 327 months. In contrast, Defendant has a more significant criminal history than

ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE
5

Avalos, which even under today's sentencing laws would expose Defendant to a mandatory minimum of ten years and a maximum of twenty-five years. Unlike Avalos, Defendant agreed to his sentence of 240 months.[3]

---

[3] Other cases cited by Defendant are also distinguishable. *See e.g.*, *United States v. Spriggs*, 1:10-cr-00364-WDQ, 2021 WL 1856667, at *2-3 (D. Md. May 10, 2021) (granting compassionate release where government did not contest that inmate's medical conditions were an "extraordinary and compelling reason for his release"; inmate had shown considerable rehabilitative efforts; inmate's prior criminal history did not involve allegations of violence or possession of firearms; and all of inmate's priors occurred more than fifteen years prior, when inmate was in his late teens or early twenties); *United States v. Parish*, 2:07-cr-00578-RMG, 2021 WL 1152960, at *1-3 (D. S.C. Mar. 17, 2021) (granting compassionate release to inmate, age sixty-three, noting that "[t]he combined effect of [inmate's] significant array of cardiac, kidney, vascular, and other chronic conditions, exacerbated by his advancing age, makes it highly probable he faces a progressing declining health status in an institutional setting and would not survive until his anticipated release date at age 71."); *United States v. Vargas*, 2020 WL 6886646, at *5 (S.D.N.Y. Nov. 24, 2020) (in the wake of changes to sentencing laws, granting compassionate release to inmate, age fifty-five, who served 90% of his 40-year sentence after jury conviction; suffered from obesity, hypertension, blindness in one eye; demonstrated rehabilitation; and expressed intent to care for ailing, elderly mother); *United States v. Jones*, 482 F. Supp. 3d 969, 979, 981 (N.D. Cal. Aug. 27, 2020) (granting compassionate release to inmate, age forty-eight, who had only fifteen months more to serve of his nearly thirty-year sentence); *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020) (granting compassionate release to inmate, age fifty-seven, who the sentencing judge reluctantly sentenced to the mandatory minimum for crimes committed when inmate was only twenty years old, and the fact that, if sentenced today, inmate would not be subject to such a long term of imprisonment); *United States v. Morefield*, No. 13-cr-2113, 2021 WL 1536576, at *3-5 (E.D. Wash. Apr. 19, 2021) (granting compassionate release because among other things, inmate had asthma and had not received vaccine; inmate received fifteen year sentence whereas codefendants received four month sentence; and if inmate were sentenced today, he would be facing an eight to fourteen month advisory sentencing range and "would no longer be facing a mandatory life sentence and would no longer be facing a mandatory 20-year sentence"); *United States v. Perez*, 2020 WL 1180719, at *3 (D. Kan. Mar. 11, 2020) (granting compassionate release to Perez "particularly in light of the United States' concession that there are sufficient reasons supporting Perez's request for immediate release," after he served more than thirty years in prison; had only two minor infractions with the BOP; and earned his GED and availed himself of various educational programs); *United States v. Armstrong*, No. 18-cr-5108-BAS-1, 2020 WL 4366015, at *3-4 (S.D. Cal. July 30, 2020) (granting compassionate release to inmate, age fifty-four, who purportedly recovered from COVID-19, but was housed in facility with high level of infection; suffered from high blood pressure, high cholesterol, type 2 diabetes and obesity; completed twenty-one months of his forty-six-month sentence; engaged in rehabilitation programs; and "[f]inally, the Court is aware that defendants committing similar offenses now, in the time of COVID-19, are receiving vastly lower sentencing recommendations, because their time in custody is harsher."); *United States v. Mcrae*, No. 17-cr-643, 2021 WL 142277, at *3-5 (S.D.N.Y. Jan. 15, 2021) (granting compassionate release to inmate who had served more than thirty of his seventy-month sentence in a facility experiencing a very severe outbreak of COVID-19; suffered from obesity, hypertension, prediabetes, and hepatitis C; completed a drug abuse program; and did not have a history of violence); *United States v. Frost*, 16-cr-0582, 2021 WL 229665, at *8 (D. Md. Jan. 22, 2021) (granting compassionate release where government agreed inmate met the extraordinary and compelling reason prong for compassionate release); *United States v. McCoy*, 981 F.3d 271, 277-

Finally, the Court has considered the combined effects of the change in sentencing laws, the ongoing pandemic, the conditions at Lompoc, Defendant's age and medical conditions, and the years served, including the successful completion of his classes and record of rehabilitation. The Court finds that their combined effect does not rise to the level of extraordinary and compelling circumstances to justify compassionate release at this time.

It is possible that in the future, emerging scientific information may tip the balance in favor of compassionate release. If new scientific information materializes or there are other material changes to support a motion for compassionate release, Defendant may renew his motion.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion is DENIED.

**IT IS SO ORDERED.**

Dated: October 18, 2021

EDWARD J. DAVILA
United States District Judge

---

79, 286 (4th Cir. 2020) (affirming compassionate release for inmates who ranged in age from nineteen to twenty-four years of age at time of offense and had minimal or no criminal histories; had spent close to more than half their lives in prison, having served either seventeen or twenty five years; had engaged in rehabilitation programs; and if sentenced today, would likely be subjected to sentences that were either sixteen or thirty years shorter).

ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE
7